(No. 75-CV-0290—

*In re* APPLICATION OF SUZETTE DELISA YOUNG.

*Opinion filed September 26, 1979.*

HEATH, VITAL, STROGER, BOARMAN & WILLIAMS (LE-ROY P. VITAL, of counsel), for Claimant.

WILLIAM J. SCOTT, Attorney General (LEONARD CAHN-MAN, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

This claim arises out of the death of Jerome W. Young which took place on July 30, 1974, at 6500 S. Carpenter, Chicago, Illinois. Claimant seeks compensation for loss of support under the provisions of the "Crime Victims Compensation Act," Ill. Rev. Stat. 1975,

ch. 70, par. 70 *et seq.*, (hereafter referred to as the Act).

On September 23, 1975, this Court entered an order denying this claim. Claimant requested a hearing, and a hearing was held before a Commissioner of this Court.

The Court finds the issue presented to this Court was whether the Claimant was a dependent of the deceased.

The facts of the incident were that Jerome W. Young while walking at or near 6500 S. Carpenter, Chicago, Illinois, on July 30, 1974, was shot in the head after having been accosted by his assailant. The deceased was dead on arrival at St. Bernard's Hospital, Chicago, Illinois, of the bullet wound to his head.

The Chicago Police Department was notified immediately of the incident. An arrest was made of the alleged assailant who was indicted for murder and was, at the time of the hearing before the Court, awaiting trial.

The Court finds that the Claimant cooperated fully with law enforcement officials in the apprehension and prosecution of the assailant; that the victim and his assailant were not related nor did they share the same household; that the death of the victim was not in any way attributable to his own wrongful act or provocation of the assailant; and that the appropriate notice was timely filed as contemplated by the Act.

Accordingly, this Court finds that Jerome W. Young was the innocent victim of a violent crime to wit: Murder. Ill. Rev. Stat. ch. 38, par. 9—1.

Suzette Newell is the ex-wife of the deceased victim. She has filed this claim on behalf of her daughter, Suzette Delisa Young, age 12 at the time of the death of her father, who alleges that she was dependent upon the victim for partial support.

Suzette Newell was divorced from the deceased victim on March 11, 1964. The decree of divorce specified that Suzette Young (Newell) have the custody of Suzette Delisa Young. The matter of child support was reserved by the Court. On July 15, 1965, the decree for divorce was modified to require the deceased victim to pay $15.00 per week for child support to the plaintiff.

Suzette Newell testified that although she had not known her former husband's residence address, he paid support payments through his sister, with whom the child visited. According to her testimony payments of between $15.00 and $30.00 were paid intermittently but mostly every two weeks.

Her testimony, however, was severely impeached by the application filed by her in this Court in which the Claimant answered "none" to Question No. 30 in the application which asked for the "amount contributed to or on behalf of dependents by victim."

The Claimant, Suzette Newell, stated that her answer to the question was not true but that she was induced to answer in that manner by her brother, Levy Witfield, an attorney (but not licensed in Illinois) who helped her prepare the application. Her brother advised her to answer the question in that manner because her former husband was in arrears in payments at that time.

The Claimant was interviewed by an investigator of the Attorney General at which time she was asked the same question. She testified that she remained silent while her brother who was present at the interview answered the question in the same manner, i.e. no money was being contributed by the victim to or on behalf of his daughter, Suzette Delisa Young.

The victim's sister, Gloria Hudson, testified on behalf of Claimant that the victim saw his daughter many times,

averaging every two weeks and left money some of the times he visited, and that the amount of money varied from time to time. She testified that payments were made in cash and that the money was left with her because the victim did not want his ex-wife to know his address. In addition to payments, she testified that the victim brought clothes and toys to the child at various times.

The victim, at the time of his death, was employed by Arrow Security Company and had been earning $1,495.00 per month during the six-month period immediately preceding his death.

This Court held in the case of *In re: Application of Ida Smith*, (1976), 75-CV-0055 that:

"It is the opinion of this Court that mere entitlement to support is not dependency under the Act."

The Court further said that:

"In looking at the Act as a whole, it is clear that the legislature intended to compensate those persons who lost actual out-of-pocket money as a result of violent crime. Every provision of the Act is strictly limited to out-of-pocket expense. One who is not actually receiving support, at the time of the crime, cannot be said to have had an out-of-pocket loss. An expectancy of support is not dependency under the Act."

Although in the *Smith* case, *supra*, there was no Court order which ordered the victim to support the alleged dependent, the opinion of this Court was stated clearly and is applicable to the instant case.

It was, therefore, Claimant's burden to show actual contributions of support.

It is the opinion of this Court that, in view of the answers given by Claimant in her application to this Court and the statements made to the investigator for the Attorney General of Illinois, no award should be given for lost support.

The application was signed by Claimant who admitted reading and understanding it. She was helped in its preparation by a person educated in the law. She admitted standing silent when the question was orally answered in the same manner by her brother at the interview with the investigator of the Attorney General.

If the Court were to believe the testimony of the Claimant that she knew the statement on the application was false and that she knew her brother's statement to the Attorney General investigator was false, then she is ineligible for any compensation whatever by virtue of section 13 of the Act which states:

"In addition to any other civil liability or criminal penalty provided by law, a person who is convicted of having wilfully misstated or omitted facts relevant to the determination of whether compensation is due under the Act or of the amount of that compensation, whether in making application for compensation or in the further proceedings provided for in this Act, shall be guilty of a class A misdemeanor. No compensation under this Act may be paid to an applicant who violates this section or knowingly acquiesces in a violation of this section."

This Court believes that the Claimant did not sustain her burden of proof and is further ineligible for compensation by virtue of section 13 of the Act.

The Court, therefore, finds no cause to modify its order of September 23, 1975, denying this claim.